IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JOSEPH JOHNSON**, | Case No. 2:19-cv-01767-IM |
| Petitioner, | **OPINION AND ORDER** |
| v. | |
| **BRANDON KELLY**, | |
| Respondent. | |

**IMMERGUT, District Judge.**

Petitioner Joseph Johnson ("Petitioner"), an individual in custody at Eastern Oregon Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254, alleging that the trial court erroneously failed to order an evaluation when Petitioner's mental competency was called into question. Because the state court decision denying relief on his claim is entitled to deference, Petitioner's Amended Petition for Writ of Habeas Corpus (ECF No. 12) is DENIED, and this proceeding is DISMISSED, with prejudice.

PAGE 1 – OPINION AND ORDER

# BACKGROUND

On May 30, 2014, a Multnomah County grand jury returned an indictment charging Petitioner with two counts of Robbery in the First Degree with a Firearm; one count of Assault in the First Degree with a Firearm; and one count each of Assault in the First Degree with a Firearm, Unlawful Use of a Weapon with a Firearm, Felon in Possession of a Firearm, Unlawful Delivery of Methamphetamine, and Unlawful Possession of Methamphetamine. (Rept's Exs. (ECF No. 13), Ex. 102.) The charges arose from an incident in which Petitioner shot and robbed his former cellmate, Jordan Merrell ("Merrell") after they both were released from custody. (Resp't Ex. 103 at 53-56.) Petitioner pleaded not guilty on all charges and proceeded to trial before a jury in June 2014.

At trial, the State presented evidence that in January 2014, Merrell and his wife were walking home from the grocery store when Petitioner emerged from behind some bushes with a gun and demanded their valuables. (*Id.* at 67-69.) Before Merrell could comply, Petitioner shot him in the leg. (*Id.* at 70, 95-96, 323-24.) As Merrell fell to the ground, he threw his wallet at Petitioner, who accidentally shot himself as he fled. (*Id.* at 71, 323-24.) Law enforcement subsequently apprehended Petitioner several blocks away with the gun and Merrell's wallet in his possession. (*Id.* at 181-87, 194-96, 229, 350.) Law enforcement also searched Petitioner's apartment and uncovered marijuana, methamphetamine, and a gram scale. (*Id.* at 258-59, 337-38.)

Before the State had finished presenting its case-in-chief, Petitioner asked to address the court. Outside the jury's presence, Petitioner expressed concern that "[his] story [was] not being told." (*Id.* at 156-59.) Petitioner complained that his attorney ("trial counsel") did not believe or investigate his version of events—specifically, his claims that Merrell and his wife had "staked out" his apartment; that Merrell and his wife knew Petitioner carried substantial sums of money

and were attempting to rob him at the time of the shooting; and that the methamphetamine found in his system was the result of someone trying to poison him. (*Id.* 158-59.)

In response to Petitioner's complaints, trial counsel stated, "So this is what I was a little concerned about; your mental health issues." (Resp't Ex. 103 at 159-60.) Although Petitioner insisted that he had no mental health issues, the trial court sought to clarify trial counsel's comments, asking trial counsel if she felt that Petitioner was unable to aid and assist in his own defense. (*Id.* at 159-62.) Trial counsel responded:

> I thought I had gotten past that concern, but it's now just raised its head again, and now I am concerned. Without -- without getting into any attorney-client, some of the explanations that [Petitioner] ha[s] . . . offered to me [about what happened] . . . appear rather paranoid.

(*Id.* at 161-62.)

Acknowledging trial counsel's concern about Petitioner's ability to aid and assist, the trial court inquired into Petitioner's mental health:

| | |
|---|---|
| **THE COURT**: | So [trial counsel is] concerned that there's a mental health issue that prevents you from helping in -- helping her in defending you. |
| **[PETITIONER]**: | Yeah. |
| **THE COURT**: | It's called aiding and assisting in your defense. |
| **[PETITIONER]**: | Yeah. |
| **THE COURT**: | And so what I need to know is not -- not the ways in which you think she should have done things differently. |
| **[PETITIONER]**: | Yeah. |
| **THE COURT**: | But have you ever had a mental health diagnosis in the past? |
| **[PETITIONER]**: | Never, never. |
| **THE COURT**: | Okay. |

PAGE 3 – OPINION AND ORDER

| | |
|---|---|
| [PETITIONER]: | I've never had mental health issues. |
| THE COURT: | Do you . . . ever hear voices? |
| [PETITIONER]: | No, I never hear -- never heard nothing like that. |
| THE COURT: | Okay. |
| [PETITIONER]: | I also on -- I got out on parole, never missed a parole appointment, never gave them a dirty urinalysis, got a job. I got out of prison with $300. Got a job, lost one job, got another job, lost that, got another job, and saved my money. I had a bank account. I have a dispute with the bank because they started taking money. So I pulled my money out of the bank and I kept a lot of money on me. |
| THE COURT: | Okay. |
| [PETITIONER]: | And this -- |
| THE COURT: | That's your explanation for why there's so much money on you; is that right? |
| [PETITIONER]: | Yeah. |
| THE COURT: | Okay. |
| [PETITIONER]: | He's -- |
| THE COURT: | So -- so let me ask you, then -- I -- let me just ask you: You understand why we're here today? |
| [PETITIONER]: | Yes. |
| THE COURT: | We're here for your trial. |
| [PETITIONER]: | Yeah. And that -- and that's the thing -- |
| THE COURT: | You understand what your lawyer's job is? |
| [PETITIONER]: | Yeah. Yeah. I know -- I don't -- I don't think she's doing a bad job, but I want my story to be told. And that wasn't – that's what I was saying when -- when the police was interviewing me. I was explaining to them that I wasn't just -- I don't have a history of robbing and shooting. I have a history of selling drugs. |

PAGE 4 – OPINION AND ORDER

> I grew up -- I grew up poor in all this -- housing projects in San Francisco. Yes, I sold drugs. I went to prison 20 years ago. I shot -- It was three dudes. They shot their guns, I shot mine. I was also selling them drugs.
>
> I came out here. The man I shot here, he came to court and said, "Your Honor, I'm sorry, I was trying to rob the man for drugs and he shot me." That's what he said in open court. That dropped the deal.
>
> So this is what I was explaining to the -- to the detectives.

(*Id.* at 163-65.)

The trial court concluded that it did not "share [trial counsel's] concern" about Petitioner's ability to aid and assist, explaining that Petitioner's complaints reflected only a "concern[] about not being able to share certain details about what happened, . . . his story, as he says." (*Id.* at 165-66.) The trial court then discussed with Petitioner the risks of testifying to share those details,[1] given his criminal record,[2] and took note of additional evidence Petitioner wanted the parties to see.[3] (*Id.* at 166-76.) The trial court then allowed the trial to resume. (*Id.* at 166, 176.)

---

[1] Petitioner ultimately testified in his defense, explaining to the jury that Merrell and his wife previously had broken into and "trashed" his apartment in search of money, but that he had jumped out of his window to avoid being robbed and bought a train or bus ticket with the intention of fleeing to San Francisco. (Resp't Ex. 103 at 159, 367-68.) Petitioner claimed that Merrell and his wife later watched while five of their friends attempted to rob him, and that he and Merrell both were shot during the attempt. (*Id.* at 379, 382-83.) Petitioner testified that he did not know who shot Merrell, how Merrell's wallet came to be in his possession, or where law enforcement recovered the methamphetamine. (*Id.* at 379, 401-05.)

[2] As shared during his trial testimony, Petitioner's criminal history includes two prior assaults with firearms or other deadly weapons, one in Oregon and one in California. (Resp't Ex. 103 at 365.) He was released from custody on the Oregon conviction approximately a year-and-a-half before trial. (*Id.*)

[3] Petitioner sought to introduce evidence from his cellular phones that allegedly proved that he was the target of "a botched robbery[.]" (Resp't Ex. 103 at 167-171.)

PAGE 5 – OPINION AND ORDER

The jury ultimately returned guilty verdicts on two counts of first-degree robbery with a firearm and one count each of second-degree assault with a firearm[4], unlawful use of a weapon, felon in possession of a firearm, and unlawful possession of methamphetamine. (Resp't Exs. 101, 103 at 488-89.) The jury acquitted Petitioner of all remaining charges. (Resp't Ex. 103 at 488.) In a separate proceeding, the trial court sentenced Petitioner to a custodial term totaling 240 months, with post-prison supervision to follow. (*Id.* at 527-33.)

Petitioner filed a direct appeal, alleging that "[t]he trial court erred in failing to order an evaluation of defendant to determine whether he was fit to proceed." (Resp't Ex. 104 at 16-25.) Petitioner also raised claims regarding jury unanimity and merger under Oregon law. (*Id.* at 3-4.) The Oregon Court of Appeals affirmed without opinion, *State v. Johnson*, 281 Or. App. 284 (2016), and the Oregon Supreme Court denied review, *State v. Johnson*, 360 Or. 751 (2016).

Petitioner then sought post-conviction relief. (Resp't Exs. 111, 115.) In his counseled amended petition, Petitioner alleged that trial counsel was ineffective when she "failed to object to the sentence imposed" in Petitioner's case. (Resp't Ex. 115 at 3.) After a brief hearing, the post-conviction court denied relief. (Resp't Exs. 122, 123.) Although Petitioner appealed, he later moved to dismiss the appeal. (Resp't Ex. 124.) The Oregon Court of Appeals granted the motion and dismissed Petitioner's appeal. (Resp't Ex. 125.)

On November 4, 2019, Petitioner filed a Petition for Writ of Habeas Corpus in this Court. Appointed counsel filed an amended petition on July 7, 2020, asserting that Petitioner's "convictions are illegal, and that he is currently being held in custody in violation of the United States Constitution in the following particulars:"

---

[4] Petitioner was acquitted of first-degree assault with a firearm but convicted of the lesser included offense of second-degree assault with a firearm.

   a. Petitioner was denied his rights under the Sixth Amendment to the United States Constitution when his trial counsel failed to object and otherwise move to exclude highly prejudicial and unreliable evidence unrelated to the case; specifically, when the prosecutor stated during a cross-examination that he had evidence that petitioner was pimping out a girl.

   b. Petitioner was denied his rights under the Sixth and Fourteenth Amendments to the United States Constitution when his trial counsel failed to file a motion to sever offenses; specifically, to sever the drug charges from the robbery and assault charges, and when his appellate counsel failed to raise the claim on appeal.

   c. Petitioner was denied his rights under the Sixth Amendment to the United States Constitution when his trial counsel failed to object to the consecutive sentence structure because the charges of unlawful use of a weapon and felon in possession of a firearm should have merged at sentencing.

   d. Petitioner was denied his rights under the Fourteenth Amendment to the United States Constitution when the trial court failed to conduct a necessary and proper inquiry into competency, and then continued the trial and failed to have petitioner evaluated for competency, despite the presence of a bona fide doubt about petitioner's competency.

   e. Petitioner was denied his rights under the Sixth and Fourteenth Amendment to the United States Constitution when his trial counsel failed to object or otherwise take corrective action when the trial court failed to conduct a necessary and proper inquiry into competency, and then continued the trial and failed to have petitioner evaluated for competency, despite the presence of a bona fide doubt about petitioner's competency.

   f. Petitioner was denied his rights under the Sixth and Fourteenth Amendments to the United States when he was convicted by non-unanimous jury. *Ramos v. Louisiana*, __ U.S. __, 2020 WL 1906545 (U.S. Apr. 20, 2020), held that conviction by a less-than-unanimous jury violates the Sixth Amendment which is fully incorporated and applicable to state criminal proceedings through the Fourteenth Amendment. Petitioner's conviction by non-unanimous jury violated his rights: (1) to trial by jury, including to (a) unanimity and to (b) proof beyond a reasonable doubt, (2) to trial before a fair, representative cross-section of the community, and (3) his right to equal protection of the law.[5]

---

[5] Petitioner's convictions all were unanimous except for his convictions for second-degree assault and unlawful use of a weapon. (Resp't Ex. 103 at 489-94.) The Court notes that although Petitioner may be entitled to relief on this claim in state court, federal habeas relief is barred because *Ramos* does not apply retroactively on federal collateral review. *Edwards v. Vannoy*, 141 S. Ct. 1547, 1559 (2021).

PAGE 7 – OPINION AND ORDER

(Am. Pet. at 3-5.)

Respondent urges the Court to deny habeas relief, arguing that all but one of Petitioner's claims are procedurally defaulted, and that the single claim fairly presented to the Oregon Courts was denied in a decision entitled to deference. (Resp't Resp. to Pet. (ECF No. 12), at 4-5.) This Court agrees with Respondent and concludes that the only claim that is not procedurally defaulted is Petitioner's claim that the trial court failed to conduct a necessary inquiry into competency and failed to have Petitioner evaluated for competency to stand trial (Subclaim (d)).

## DISCUSSION

I.   **Petitioner's Competency Claim (Subclaim (d))**

   A.   **Legal Standards**

      1.   **Deference to State-Court Decisions Under AEDPA**

The Antiterrorism and Effective Death Penalty Act ("AEDPA") prohibits relitigation of any claim adjudicated on the merits in state court unless such adjudication resulted in a decision that was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) was "based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). A federal habeas court must apply a presumption of correctness to the state court's findings of fact, and the habeas petitioner bears the burden of rebutting that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). In other words, AEPDA imposes "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands the state-court decision be given the benefits of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (internal quotations and citations omitted).

A state-court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law occurs if the state court correctly identifies the governing legal principle but misapplies that principle to the facts of the case. *Id.* at 407. The "unreasonable application" clause requires the state court's decision to be more than merely erroneous or incorrect. *Id.* at 410. Rather, the state court's application of clearly established federal law must be objectively unreasonable. *Id.* at 409.

A federal habeas court may not disturb a state-court decision on factual grounds unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence before it. 28 U.S.C. § 2254(d)(2). Under the "unreasonable determination" clause, "[t]he question . . . is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). The Ninth Circuit has clarified that when a petitioner challenges the substance of a state court's findings, the federal habeas court "must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.), *cert denied*, 543 U.S. 1038 (2004).

"Determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Where a state court decision is issued without explanation, "the habeas petitioner's burden still must be met by

PAGE 9 – OPINION AND ORDER

showing there was no reasonable basis for the state court to deny relief." *Id.* Where, however, the highest state court issues a decision on the merits unaccompanied by its reasons for the decision, a federal habeas court must "look through" to the last reasoned decision issued in a lower state court, and presume the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018).

**B.    Analysis**

In subclaim (d), Petitioner asserts that the trial court deprived him of his Fourteenth Amendment right to due process when it failed to order a mental health evaluation "despite . . . a bona fide doubt about [Petitioner's] competency." (Am. Pet. at 4.) As noted above, the Oregon Court of Appeals rejected a similar claim without comment during Petitioner's direct appeal proceedings.

The Fourteenth Amendment's Due Process Clause "prohibits the criminal prosecution of a defendant who is not competent to stand trial." *Medina v. California*, 505 U.S. 437, 439 (1992) (simplified); *see also Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001) (explaining that "[a] defendant may not be criminally prosecuted while he is incompetent, and the state must give him access to procedures for determining his competency"). The "substantive standard for determining competence to stand trial" is whether a defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Torres v. Prunty*, 223 F.3d 1103, 1106 (9th Cir. 2000) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). "[W]here the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the trial judge on his motion must . . . conduct a hearing to determine competency to stand trial." *Id.* at 1106-07 (quoting *De Kaplany v. Enomoto*, 540 F.2d 975 979 (9th Cir. 1976) (en banc)).

PAGE 10 – OPINION AND ORDER

As detailed above, Petitioner expressed to the trial court his concern that his "story" was not being told, complaining that trial counsel did not credit or investigate his version of events. When trial counsel noted that Petitioner's explanations appeared "rather paranoid" and expressed concern about Petitioner's mental health, the trial court questioned Petitioner, who consistently denied having any mental health issues, denied ever having been diagnosed with a mental illness in the past, and denied ever having heard voices. Petitioner then acknowledged his understanding of the trial proceedings and the role of trial counsel, going so far as to explain that he did not think trial counsel was "doing a bad job" but that he "just want[ed] [his] story to be told." The trial court then indicated that it did not share trial counsel's concerns about Petitioner's mental health and, after additional discussion, allowed the trial to resume.

Petitioner argues, as he did on direct appeal, that his answers to the trial court's limited questioning do not support the trial court's conclusion that he was able to aid and assist. (Pet'r's Br. in Supp. (ECF No. 48) at 8-9.) Specifically, Petitioner argues that the trial court did not attempt to determine if his assertion that he never had been diagnosed with a mental illness "was accurate[,]" nor did the trial court inquire further when he gave cursory answers as to his understanding of why they were in court and the role of his attorney. (*Id.* at 8-9.) Petitioner insists that his trial testimony "displayed a level of paranoia" that further called into question his ability to aid and assist, and that given this "panoply of circumstances and facts," the trial court "was required by due process to hold a proper competency hearing." (*Id.* at 9.)

Upon review, the Court cannot conclude that the trial court's decision to forego a formal competency hearing was objectively unreasonable. As Respondent points out, the issue appears to amount to a disagreement between trial counsel and Petitioner about trial strategy rather than a serious concern about Petitioner's mental health. Although the trial court's initial colloquy was

PAGE 11 – OPINION AND ORDER

somewhat cursory, the record indicates that Petitioner resolutely denied that he was or ever had suffered from any kind of mental health issue, that he "maintained a self-awareness that one would not expect from a person with mental illness" during the discussion, (Resp't Ex. 106 at 18), and that he demonstrated a firm understanding of the proceedings and the role of his attorney. Indeed, Petitioner expressly acknowledged the difficult position in which he placed trial counsel and explained why he nevertheless wanted to present his version of events:

> . . . I understand that [my desire to "tell my story" is] making it hard on [trial counsel], because she feels that, you know, it may hurt the defense. But it's like at this point the picture [the State is] painting is just like I'm just some monster.
>
> And I did -- yes, I've been a hustler, is my -- how I have a criminal background selling drugs. But I have never had a criminal -- I've never had a background of using drugs. I have never had a background of just robbing people. I've never had a -- I have a criminal background of defending the things that belong to me. And it's like my story's not been told.
>
> I understand what it looks like. But I just want to paint an accurate picture of what happened that night.
> . . . .
>
> This was a botched robbery here. And I was -- I was the target. [Merrell] wasn't the target. I'm not going to rob him. He -- I was helping him pay his rent.

(Resp't Ex. 103 at 167-68.) Petitioner's disagreement with his attorney's trial strategy and his belief that he would benefit from sharing his "story" with the jury, even if unreasonable, do not necessarily establish a bona fide doubt about his competence. *Compare Torres*, 223 F.3d at 1109-10 (finding that the defendant's "unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required" where he "insisted on wearing jailhouse blues; threatened to assault his attorney; insisted, after being ordered shackled, to be handcuffed as well; and continually disrupted the trial until he was removed from the courtroom and locked up").

Petitioner's renewed arguments therefore do not call into question the reasonableness of the trial court's decision to forego a competency hearing. Petitioner plainly understood, both rationally and factually, the import of the proceedings against him and was able to communicate

PAGE 12 – OPINION AND ORDER

with trial counsel with a reasonable degree of understanding. Petitioner thus has not shown that the Oregon Court of Appeals' denial of relief on this claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement[,]" *Richter*, 562 U.S. at 103, and therefore its decision is entitled to deference. Accordingly, the Court denies habeas relief on subclaim (d).

## II.     Unargued Claims

Petitioner does not argue the merits of subclaims (a), (b), (c), (e), or (f) in his supporting brief. In addition, Petitioner does not challenge Respondent's argument that those claims are procedurally defaulted, nor has Petitioner established cause and prejudice or a fundamental miscarriage of justice to excuse the default. Accordingly, habeas relief is precluded as to subclaims (a), (b), (c), (e), and (f) because they are procedurally defaulted, and because Petitioner has failed to sustain his burden of demonstrating entitlement to habeas relief on those claims. *See* 28 U.S.C. § 2248 (instructing that "[t]he allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas proceeding, if not traversed, shall be accepted as true except to the extent that the judge finds from the evidence that they are not true"); *see also Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir. 2002) (recognizing that a habeas petitioner carries the burden of proving his case).

///

///

///

///

///

///

PAGE 13 – OPINION AND ORDER

## CONCLUSION

Based on the foregoing, the Amended Petition for Writ of Habeas Corpus (ECF No. 12) is DENIED, and this proceeding is DISMISSED, with prejudice. Petitioner has not made a substantial showing of the denial of a constitutional right, and therefore this Court DENIES a Certificate of Appealability. *See* 28 U.S.C. § 2253(c)(2).

**IT IS SO ORDERED.**

DATED this  6th  day of March, 2023.

Karin J. Immergut
United States District Judge